UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DOREEN TEDESCHI and
MICHAEL TEDESCHI,

      Plaintiffs,

v.                                               Case No.  2:13-CV-202

USAA FEDERAL SAVINGS BANK,           HON. GORDON J. QUIST

      Defendant.
_____/

## **OPINION**

      Plaintiffs, Doreen and Michael Tedeschi, husband and wife, have filed a five-count pro se Amended Complaint against Defendant, USAA Federal Savings Bank, alleging that USAA violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. The Tedeschis have moved for entry of partial summary judgment on Counts I, II, and IV of their Amended Complaint. In response, USAA has moved for summary judgment, requesting that the Court dismiss all claims.

      For the following reasons, the Court will deny the Tedeschis' Motion for Partial Summary Judgment and grant USAA's Motion for Summary Judgment.

### **I. SUMMARY JUDGMENT STANDARD**

      Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

      The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## II. APPLICABLE LAW

Congress enacted the FCRA

> to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title.

15 U.S.C. § 1681(b); *see also Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52, 127 S. Ct. 2201, 2205 (2007) ("Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."). The FCRA imposes certain duties on a furnisher of information to a consumer reporting agency (CRA) that arise upon receipt of a notice from the CRA that the consumer disputes the completeness or accuracy of information provided by the furnisher. *See* 15 U.S.C. § 1681s-2(b)(1). Upon receipt of such notice, the furnisher must

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the [CRA] pursuant to 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the [CRA];
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other [CRAs] to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a [CRA] only, as appropriate, based on the results of the investigation promptly –
>
>> (I) modify that item of information;
>>
>> (ii) delete that item of information; or
>>
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1); *see also Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 614 (6th Cir. 2012) (noting that a furnisher must comply with the duties specified in § 1681s-2(b)(1) only upon receipt of notice of a dispute from a CRA). The furnisher must generally complete these actions within 30 days of receiving notice of the dispute from the CRA. 15 U.S.C. § 1681s-2(b)(2).

The "FCRA expressly creates a private right of action against a furnisher who fails to satisfy one of five duties identified in § 1681s-2(b)." *Boggio*, 696 F.3d at 618. However, "[a] private cause of action against a furnisher of information does not arise until a [CRA] provides proper notice of a dispute." *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012) (per curiam). A consumer is entitled to recover actual damages upon a showing that the furnisher was negligent in breaching one of these duties. *Boggio*, 696 F.3d at 618. If the consumer can show that the furnisher wilfully violated one of the duties, the consumer may recover actual or statutory damages, as well as punitive damages. *Id.* The consumer may also recover costs and attorney's fees. *Id.*

### III. FACTS

For purposes of clarity, the Court will first recite the Tedeschis' factual allegations in their Amended Compliant and then set forth the facts supported by the evidence in the record.

**A.     Tedeschis' Allegations**

The Tedeschis allege that:

- On April 20, 2012, they contacted three CRAs, Equifax, Experian, and TransUnion (sometimes collectively referred to herein as the CRAs), to report an inaccurate item from USAA on their credit reports. (Dkt. # 15 ¶ 4.)

- Within 30 days thereafter, each of the CRAs notified the Tedeschis that it had contacted USAA, and USAA had confirmed that the inaccurate item was correct. (*Id.*)

- On May 21, 2012, the Tedeschis contacted USAA directly to request that USAA correct the inaccurate item. (*Id.* ¶ 5.) The Tedeschis followed up on their May 21, 2012 letter on June 29, 2012, with a certified letter, and on July 3, 2012, with a fax sent to USAA employee Justin Cruz. (*Id.* ¶¶ 6, 8.)

- On August 3, 2012, USAA sent the Tedeschis a letter stating that it had submitted a request to the CRAs to remove the disputed item from the Tedeschis' credit reports. (*Id.* ¶ 9.)

- On or about August 24, 2012, the Tedeschis sent Equifax, Experian, and TransUnion letters to ensure that the disputed item was corrected. All three CRAs notified the Tedeschis that USAA had been contacted and the information reported to be inaccurate had been removed. (*Id.* ¶ 10.)

- In February, 2013, the Tedeschis noticed that the disputed item again appeared on their credit reports, and they wrote to USAA demanding that it remove the inaccurate item. (*Id.* ¶ 11.) On April 15, 2013, a USAA employee contacted the Tedeschis and told them that each dispute must be reported separately. (*Id.* ¶ 12.)

- On May 21, 2013, USAA sent the Tedeschis a letter stating that USAA follows all federal regulations and acknowledging receipt of a dispute that the Tedeschis had filed in August 2012. (*Id.* ¶¶ 14–15.)

**B.     Facts Supported by Record Evidence**

- Although the Tedeschis claim to have contacted the CRAs in April 2012, the evidence shows that they actually contacted the CRAs in May 2012. (Dkt. # 51-1 at Page ID ## 273, 275.)[1] Regardless, there is no evidence that the CRAs notified USAA about a dispute in April or May 2012, or at any time prior to September 2012. (*Id.* at Page ID # 259).[2]

- On May 21, 2012, the Tedeschis sent a letter directly to USAA complaining that the annotation "Dispute was Resolved," on their credit reports was inaccurate and should be removed. (*Id.* at Page ID # 263.) Although none of the CRAs had notified USAA about the dispute, by June 2012, the annotation was removed at least from the Tedeschis' TransUnion reports. (*Id.* at Page ID ## 276, 295.)[3]

- On July 3, 2012, the Tedeschis sent a direct dispute letter to USAA stating that Equifax, Experian and TransUnion were reporting the "Dispute was Resolved" annotation. (*Id.* at Page ID # 266.) USAA investigated the complaint and found that the annotation related to a dispute that the Tedeschis had filed on November 28,

---

[1] USAA contends that the Court should deny the Tedeschis' motion because they failed to properly authenticate their exhibits. Given the Tedeschis' failure to properly authenticate the exhibits they submitted in support of their motion, the Court has discretion to refuse to consider them. *See Reed v. Procter & Gamble Mfg. Co.*, 556 F.3d 421, 427 (6th Cir. 2014). In this case, the Court will consider the Tedeschis' exhibits because USAA largely relies on the same documents to support its own motion.

[2] USAA's internal transaction records, which the Tedeschis cite in support of their motion, reflect no activity on the Tedeschis' account during April though June of 2012. (Dkt. # 51-1 at Page ID 259.)

[3] The Tedeschis' Trans Union credit reports show that Trans Union removed the code "DRG" from the Tedeschis' reports in June 2012. (Dkt. # 51-1 at Page ID ## 276, 285.)

2010. (*Id.* at Page ID # 259.) Using an "XR" code, USAA instructed all three CRAs to remove the annotation. (*Id.*)

- On July 11, 2012, Michael Tedeschi spoke with USAA employee Justin Cruz, who informed Mr. Tedeschi that the CRAs had been instructed to remove the "Dispute was Resolved" annotation and that it would take 30 to 45 days for the CRAs to update the Tedeschis' credit reports. (*Id.* at Page ID ## 261, 270.)

- On August 15, 2012, the Tedeschis sent Equifax, Experian, and TransUnion dispute letters to ensure that they had followed USAA's instruction to remove the annotation. (*Id.* at Page ID ## 257, 268, 270, 272, 279, and 286.) Of the three CRAs, only Equifax notified USAA of the dispute—on September 10, 2012. (*Id.* at Page ID ## 259–60.) USAA sent Equifax an "XR" code, indicating that any previously-sent compliance code should be removed. (*Id.*) In fact, as the Tedeschis admit in their Amended Complaint, all of the CRAs informed them that the disputed item had been removed from their credit reports.

- On September 19, 2012, Equifax sent USAA another dispute notice indicating that the Tedeschis were disputing inaccurate information, without describing the information the Tedeschis deemed inaccurate. (*Id.* at Page ID # 260.) USAA investigated the dispute and confirmed that, with the exception of the account balance, the information was accurate. USAA updated the account balance and sent Equifax an "XH" code, indicating that there had been a dispute over the validity of information on the Equifax credit report and that the dispute was resolved. (*Id.*) That same month, TransUnion put a "Dispute was Resolved" annotation on the Tedeschis' credit reports. (*Id.* at Page ID ## 276, 285.)

- In February 13, 2013, the Tedeschis noticed the "Dispute was Resolved" annotation on their TransUnion credit reports and filed a dispute with TransUnion and USAA. On March 1, 2013, USAA received a dispute notice from TransUnion. (*Id.* at Page ID # 260.) USAA investigated the account and sent TransUnion an "XR" code to remove the annotation. (*Id.*)

## IV. DISCUSSION

In Counts I through IV of their Amended Complaint, the Tedeschis allege that USAA violated each of the duties set forth in § 1681s-2(b)(1), including: (1) failing to conduct an investigation (Count I); (2) failing to review all relevant information (Count II); (3) failing to report the results of its investigation to the CRAs (Count III); (4) failing to delete the negative or incorrect data from the CRAs' credit files after failing to investigate (Count IV); and (5) failing to meet the thirty-day deadline required for completion of all investigations (Count V). The Tedeschis' claims

fail not only for lack of supporting evidence, but because the evidence in the record demonstrates that USAA fully and timely performed the duties imposed under § 1681s-2(b)(1).

As noted above, the duties imposed under § 1681s-2(b)(1) arise only after a furnisher of information, such as USAA, receives a request from a CRA to respond to a dispute. *See Boggio*, 696 F.3d 611, 614. Thus, the Tedeschis can hold USAA liable under the FCRA only if they can show that a CRA first provided USAA notice of a dispute. *Brown*, 507 F. App'x at 547. The evidence set forth above shows that during 2012, only Equifax notified USAA that the Tedeschis were disputing items or information that USAA provided. The first notice was sent on September 10, 2012, and USAA investigated and, appropriately sent Equifax an "XR" code indicating that any previously-sent compliance code should be removed. The second notice was sent on September 19, 2012, and indicated that the Tedeschis were disputing the accuracy of information on their reports. USAA investigated, determined that only the balance was not accurate, and corrected the balance. Accordingly, USAA sent Equifax an "XH" code, indicating that the dispute over the validity of information on the Equifax report had been resolved. Given that Equifax had reported a new dispute, USAA properly reported that the dispute had been resolved. The only other notice that USAA received from a CRA occurred in March 2013 from TransUnion regarding the "Dispute was Resolved" annotation. USAA investigated the dispute and, appropriately, sent TransUnion an "XR" code to remove the annotation.

It appears that the Tedeschis' claims arise out of some confusion about whether USAA ever acted to remove the "Dispute was Resolved" annotation after receiving a notice from a CRA. The "Dispute was Resolved" annotation that appeared on the Tedeschis' reports at various times in 2012 and 2013 referred to two separate events. The first event concerned a November 2010 dispute by the Tedeschis, and the second event was the August/September dispute that Equifax reported to USAA on September 19, 2012. Although no CRA provided notice to USAA that the Tedeschis were

disputing the "Dispute was Resolved" annotation relating to the November 2010 dispute, USAA sent all three CRAs an "XR" code indicating that they should remove the annotation. It appears that the annotation was removed, at least by Trans Union and probably by Equifax and Experian. However, the "Dispute was Resolved" annotation appeared on the Tedeschis' credit reports once again—in September 2012—as evidenced by the TransUnion credit report, after USAA accurately reported that the new dispute had been resolved. This explains why the Tedeschis found the annotation on their TransUnion credit reports in February 2013.

In short, the Tedeschis have failed to present any evidence demonstrating that USAA violated the FCRA.[4]

## V. Conclusion

For the foregoing reasons, the Court will deny the Tedeschis' Motion for Partial Summary Judgment and grant USAA's Motion for Summary Judgment.

An Order consistent with this Opinion will be entered.

Dated: July 9, 2014                              /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                                   UNITED STATES DISTRICT JUDGE

---

[4] Even if the Court had concluded that the Tedeschis established an FCRA violation, the Court would still grant USAA summary judgment because there is no evidence that USAA acted wilfully.